[No. F002772. Fifth Dist. Sept. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HERBERTO VELA, Defendant and Appellant.

238

**COUNSEL**

Dominic P. Eyherabide, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Joel Carey, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BEST, J.**—"Once penetration has occurred with the female's consent, if the female changes her mind does force from that point (where she changes her mind) constitute rape?"

On this appeal we must determine the answer to the above question and the effect of the trial court's failure to provide the jury with the correct answer.

Defendant, then 19 years of age, was charged with the forcible rape of Miss M., then 14 years of age, the alleged rape occurring during the eve-

ning hours of November 20, 1982, near Bakersfield, California. The testimony of Miss M., together with other prosecution evidence, was more than sufficient to support a finding by the jury that defendant was guilty of rape by force of Miss M. However, during its case-in-chief, the prosecution presented evidence of a statement given by defendant to Deputy Eddy of the Kern County Sheriff's Department. Defendant's statement to Deputy Eddy, if believed to be true, together with all the other evidence, would have supported findings by the jury that Miss M. initially consented to an act of sexual intercourse with defendant; that during the act she changed her mind and made defendant aware that she had withdrawn her consent; and that defendant, without interruption of penetration, continued the act of sexual intercourse against the will of Miss M. by means of force.

During deliberations, the jury sent a note to the trial court that read, "Once penetration has occurred with the female's consent, if the female changes her mind does force from that point (where she changes her mind) constitute rape?"

Pursuant to agreement of counsel, the court answered the question in the affirmative. The trial court and attorneys then did further research on the matter and concluded that an affirmative answer to the jury's question may have been incorrect. In the meantime, the jury returned a verdict finding defendant guilty of rape and personal infliction of great bodily injury. The trial court then polled the jury on the question of whether its verdict was based on the circumstances described in the note. Two jurors answered "Yes" and ten jurors answered "No." The trial court then advised the jury: "The note that you gave us yesterday, quite frankly, is something that took us a while to check on. And to be candid with you, we do not have a definitive answer to that question, okay? The attorneys and I have discussed it, and, quite frankly, we are not sure that I gave you the correct answer or not.

"What I would like you to do is to go back in and deliberate further with the understanding that the question I answered yesterday I now must tell you I do not have an answer for you. You will then have to decide it as if I had not answered that particular question in that particular fashion."

The trial court then reinstructed the jury on the crime of rape. After further deliberations, the jury returned a unanimous verdict of guilty. No inquiry was made on this verdict as to the theory upon which the jurors based their finding that defendant was guilty of rape.

## Discussion

 In withdrawing its answer to the jury's question and telling the jury that there was no definitive answer, the trial court left the jury uninstructed on the point of law raised by the question.

█ It is settled that in criminal cases the court must *sua sponte* instruct on the general principles of law which are *raised by the evidence* and which are necessary for the jury's understanding of the case. (*People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820].) "Just as the law imposes a *sua sponte* obligation to instruct on certain principles of law in the first place (those rules openly and closely connected with the case) so does it impose on the judge a duty to reinstruct on the point if it becomes apparent to him that the jury may be confused on the law." (*People* v. *Valenzuela* (1977) 76 Cal.App.3d 218, 221 [142 Cal.Rptr. 655].) Moreover, as stated in *People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317], the court is under an "'. . . obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense . . .' where '. . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . .'"

██ ██ It was, therefore, incumbent on the trial court, in the instant case, to answer correctly the question posed by the jury, and the failure to do so constituted error. Whether such error was prejudicial to defendant and requires reversal of the judgment depends upon whether the answer to the jury's question is "Yes" or "No." We are in sympathy with the trial court because this question is one of first impression in California. For guidance, we turn to the scant authority from other jurisdictions.

In a trial for rape in Maryland, the jury, during deliberations, addressed the following question to the trial judge: "When a possible consensual sexual relationship becomes non-consensual for some reason, during the course of the action—can the act then be considered rape?" (*Battle* v. *State* (1980) 287 Md. 675 [414 A.2d 1266, 1268].) The appellate court in *Battle* v. *State* held the act could not be a rape and that the trial court erred in answering the question in the affirmative. The appellate court first noted that case law is unanimous in holding consent given at any time subsequent to the act of intercourse will not prevent the act from being a rape. It also noted that authorities have established that consent at any time prior to penetration will prevent the act from being a rape. The court also discussed cases that hold a victim may give consent throughout the preparatory acts, but if the victim withdraws consent before penetration and if the act is thereafter accomplished by force, there is a rape. (*Id.*, at pp. 1269-1270.) After reviewing these cases and finding no discussion of withdrawal of consent in midact, the court concluded: "Given the fact that consent must precede penetration, it follows in our view that although a woman may have consented to a sexual encounter, even to intercourse, if that consent is withdrawn prior to the act of penetration, then it cannot be said that she has consented to sexual inter-

course. On the other hand, ordinarily if she consents prior to penetration and withdraws the consent following penetration, there is no rape." (*Id.*, at p. 1270.)

The same conclusion was reached in a North Carolina case. In *State* v. *Way* (1979) 297 N.C. 293 [254 S.E.2d 760], the jury also asked during deliberations if consent could be withdrawn and a rape conviction found. The trial and appellate courts said yes, but the Supreme Court said no. This court noted that the normal situation in which consent was withdrawn was that in which more than one act of intercourse occurred. In such case, consent to one act did not mean all acts of intercourse were consented to by the victim. The court then noted, without citing authority, that when only one act of intercourse is accomplished, if the victim consents initially and withdraws that consent in midact no rape occurred. The court stated, "If the actual penetration is accomplished with the woman's consent, the accused is not guilty of rape, although he may be guilty of another crime because of his subsequent actions." (*Id.*, at p. 762.)

█ These cases point out that the presence or absence of consent at the moment of initial penetration appears to be the crucial point in the crime of rape. For example, if at the moment of penetration the victim has not consented, no amount of consent given thereafter will prevent the act from being a rape. Also, a victim may give consent during preparatory acts all the way up to the moment of penetration, but the victim may withdraw that consent immediately before penetration and if communicated to the perpetrator, the act of intercourse that follows will be a rape no matter how much consent was given prior to penetration. It follows that if consent is given at the moment of penetration, that act of intercourse will be shielded from being a rape even if consent is later withdrawn during the act.

California case law and statutory law also seem to focus on the moment of penetration as the crucial moment of the crime of rape.

Penal Code section 261 provides in relevant part the following definition of rape: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . (2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another." █ To be convicted of rape the defendant must engage in an act of sexual intercourse with the person, the person must not be the spouse of defendant, the act of intercourse must be against the will of the person, and the act must be accomplished by force. (See CALJIC No. 10.00 (rev. 1982).) In essence, then, rape may be defined as nonconsensual sexual intercourse. (*People* v. *Key* (1984) 153 Cal.App.3d 888, 895 [203 Cal.Rptr. 144].)

It is well settled that "Any sexual penetration, however slight, is sufficient to complete the crime." (Pen. Code, § 263.) The California Supreme Court also has noted that in order for a conviction of rape to stand, the victim must be alive at the moment of penetration. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 604-605, fn. 15 [114 Cal.Rptr. 250, 522 P.2d 1058].) The Supreme Court noted that Penal Code section 263 provides in part, " '[t]he essential guilt of rape consists in the outrage to the person and feelings of the female.' " The court then reasoned there can be no rape of a dead person because at the moment of sexual penetration there is no outrage to the feelings of the dead victim.

As noted above, the essence of the crime of rape is the outrage to the person and feelings of the female resulting from the nonconsensual violation of her womanhood. When a female willingly consents to an act of sexual intercourse, the penetration by the male cannot constitute a violation of her womanhood nor cause outrage to her person and feelings. If she withdraws consent during the act of sexual intercourse and the male forcibly continues the act without interruption, the female may certainly feel outrage because of the force applied or because the male ignores her wishes, but the sense of outrage to her person and feelings could hardly be of the same magnitude as that resulting from an initial nonconsensual violation of her womanhood. It would seem, therefore, that the essential guilt of rape as stated in Penal Code section 263 is lacking in the withdrawn consent scenario.

Our conclusion that no rape occurs under these circumstances does not preclude the perpetrator from being found guilty of another crime or crimes warranted by the evidence. Consent at the moment of penetration does not give the male a license to commit any act of force upon the female. It has been held that while withdrawn consent after penetration or during the act of sexual intercourse negates a rape, the male may be guilty of another crime, such as assault or battery. (*State* v. *Way, supra,* 254 S.E.2d at p. 762; see Annot. (1963) 91 A.L.R.2d 591, 597-598; see Comment (1954) 6 Stan.L.Rev. 719, 726, fn. 36.) It is also settled that each act of nonconsensual sexual penetration of a victim constitutes a separate rape offense. If a female initially consents to an act of sexual intercourse but thereafter withdraws her consent, each subsequent act of sexual penetration accomplished by force or fear will constitute a separate and distinct act of rape. (See *People* v. *Perez* (1979) 23 Cal.3d 545, 549-554 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Clem* (1980) 104 Cal.App.3d 337, 347 [163 Cal.Rptr. 553].)

We hold that, under the circumstances of this case, the trial court's error in failing to answer the jury's question in the negative was prejudicial

to defendant and reversal of the judgment is required. After the initial verdict was announced, two jurors advised the trial court that their finding that defendant was guilty of rape was based upon a state of the evidence as described in the jury's question. When the trial court withdrew its previous answer and left the jury uninstructed on the point, it is entirely possible, if not probable, that one or more of the jurors based their final verdict on such a state of the evidence.

A remand for retrial being required, we find it neither necessary nor appropriate to address defendant's remaining claims of error.

The judgment is reversed.

Woolpert, Acting P. J., and Ritchey, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 31, 1985. Kaus, J.,† participated therein. Bird, C. J., Broussard, J., and Lucas, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.